

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **James Kevin Brown** | § | Case No. 22-20023 |
| | § | |
| Debtor | § | Chapter 7 |

## <u>MEMORANDUM OF DECISION AND ORDER GRANTING MOTION</u>

Before the Court for consideration is the "Motion to Compel Trustee to Turnover Funds to Debtor" (the "Motion") filed on May 25, 2022 by Debtor, James Kevin Brown. At first glance, Debtor's Motion seeks to compel the Chapter 7 Trustee, Diane Carter, to remit to Debtor the sum of $16,592.87 seized pre-petition from his bank account by a state court receiver. Trustee objects to the Motion. The Court conducted an evidentiary hearing on September 21, 2022, at which Debtor testified.

The Court finds that the Motion was properly served pursuant to the Federal and Local Rules of Bankruptcy Procedure, and that it contained the appropriate twenty-one (21)-day negative notice language pursuant to Local Bankruptcy Procedure Rule 9007, which directed any party opposed to the relief sought by the Motion to file a written response within twenty-one (21) days or the Court would deem the Motion unopposed. Other than the Chapter 7 Trustee, no other creditor or party-in-interest objected. After consideration of the Motion, the Trustee's objection, the evidence admitted,

the relevant legal authorities, and the arguments and presentations of the

parties, the Court concludes that the Motion should be **GRANTED**.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§

1334 and 157(a).  The Court has the authority to enter a final judgment in

this contested matter because it constitutes a core proceeding pursuant to 28

U.S.C. §§§ 157(b)(2)(A), (b)(2)(E), and (b)(2)(O).

## II. Factual and Procedural Background

Debtor has worked in the construction business for approximately 25

years as a sole proprietor.  In early 2021, he was hired by Lloyd and Kim

Cordell to perform construction work on their home located in Marion

County, Texas.  The work to be performed included replacing floor beams and

joists and renovation work in a bathroom and kitchen.  Despite his experience

in the construction business, Debtor is not a detailed or sophisticated record

keeper.  The total price for the work to be performed was $83,000.00, which

was documented together with the list of tasks to be performed in a single

page document the Court refers to as a contract.  This contract contained the

agreement reached, but lacked detailed terms and conditions.  At some point

afterwards Lloyd Cordell died, but Debtor continued to perform the project for

Kim Cordell, his widow.

According to Debtor's testimony, the mechanics of payment worked as follows.[1]  First, Debtor would be paid a "draw" amount which was deposited into Debtor's bank account at North East Texas Credit Union.  Debtor would then use these "draw" funds to purchase materials and pay laborers for use on the Cordells' construction project.  Debtor testified that the Cordells' project was the only construction project on which he was working at the time.

On March 9, 2022, Debtor was paid $25,000.00 by check #1356 drawn on the Cordells' account at American Airlines Credit Union.  The memo line of this check indicates this amount was for "Labor & Material."  Debtor testified this sum was a "draw" for the project and indeed he made a notation to that effect on the contract.  Debtor further testified he planned to use these funds mostly to purchase materials such as joists, brick, and cement for the sub-floor, and to pay Debtor's labor crew.  Approximately $5,000.00 was used to pay Debtor, including a payment on the work truck he uses on construction jobs.

On March 11, 2022, North East Texas Credit Union debited $273,573.85 from the same account into which Debtor deposited the $25,000.00 check.  The credit union did this at the request of Mike Bernstein, a state court receiver

---

[1] The Court found Debtor a credible witness.

appointed to collect a judgment against Debtor. Debtor did not have $273,573.85 in this account. The balance in the account at the time it was debited was $16,592.87. This lesser amount was paid by North East Texas Credit Union to the receiver, who later forwarded it to the Trustee. Debtor's bank statement admitted into evidence does not reflect any deposits by Debtor between the time the $25,000.00 check was deposited and when his account was debited by his credit union.

Debtor learned of the actions taken by the receiver and his credit union on March 11, 2022. When he tried to pay his laborers for work already performed on the construction project, there was no money in the account. He testified that he could not have finished the construction job without his laborers, and that the laborers would not have finished worked on the job if not paid. Debtor borrowed approximately $16,000.00 from his mother to pay his laborers and finish the job. Debtor further testified that no subcontractors, laborers, or materialmen are unpaid because Debtor was able to borrow funds to finish.

Shortly thereafter on March 14, 2022, Debtor filed a voluntary petition for Chapter 7 in this Court. After the petition date, Debtor was paid another "draw" and completed the project for the widow Cordell.

### III. Analysis

The Motion concerns the character of the $16,592.87 which Debtor contends are construction trust funds under Tex. Prop. Code Ann.§ 162.001, et. seq. (the "CTFA"). Trustee contends Debtor lacks standing to bring the Motion, has failed to comply with the CTFA, that no estate creditors are beneficiaries under the CTFA, and that Trustee should disburse the $16,592.87.

### A. Standing

The question of standing was included in Trustee's objection. Standing was not, however, addressed nor raised by either party at the hearing. Lack of standing cannot be waived, and must be considered by the Court. *United States v. AVX Corp.*, 962 F.2d 108, 116 n. 7 (1st Cir. 1992).

At its core, the doctrine of standing is a jurisdictional issue which must be addressed at the outset of a case. *United States v. Hays*, 515 U.S. 737, 742 (1995); *see also FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-31 (1990) ("standing is perhaps the most important of the jurisdictional doctrines"). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "Standing is a species of subject matter jurisdiction, in that, if a party lacks standing, the court lacks

subject matter jurisdiction to hear the matter, and it must be dismissed." *In re Rhinesmith*, 450 B.R. 630, 631 (Bankr. W.D. Tex. 2011).

To have standing in bankruptcy one must be a "party in interest." *Kane v. National Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008). This means having both constitutional and prudential standing. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009). For constitutional standing to exist the party seeking relief "must show (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." *Id.*, citing *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). Based upon the evidence, both Debtor and any construction trust fund beneficiaries as of the petition date have suffered an injury due to seizure of the $16,592.87. That injury is directly traceable to the actions of the parties seizing and holding the $16,592.87.[2] A favorable decision by this Court would provide redress. Thus constitutional standing exists.

Prudential standing by comparison has been described by the Fifth Circuit as follows:

---

[2] The Court does not fault Trustee for her position. The role of a Chapter 7 Trustee in administering bankruptcy estates is both challenging and of critical importance to the bankruptcy system. One Court has stated that "in Chapter 7, a trustee has a unique role as an independent fiduciary, with a completely different perspective and interest in a bankruptcy estate than an individual creditor." *In re Cooper*, 405 B.R. 801, 804 (Bankr. N.D. Tex. 2009).

> "Prudential standing requirements exist in addition to 'the
> immutable requirements of Article III' as an integral part of
> 'judicial self-government.'" *Id.* (quoting *ACORN v. Fowler*,
> 178 F.3d 350, 362 (5th Cir. 1999)). "These judicially created
> limits concern [(1)] whether a plaintiff's grievance arguably
> falls within the zone of interests protected by the statutory
> provision invoked in the suit, [(2)] whether the complaint
> raises abstract questions or a generalized grievance more
> properly addressed by the legislative branch, and [(3)]
> whether the plaintiff is asserting his or her own legal rights
> and interests rather than the legal rights and interests of
> third parties." *Id.* (citing *ACORN*, 178 F.3d at 363).

*Id.*  In this case, Debtor is not asserting a generalized grievance that would be

more properly addressed by the legislative branch..  Debtor's grievance is also

clearly within the zone of interest determined by the scope and relationship of

11 U.S.C. § 541 and Tex. Prop. Code Ann. § 162.001, et. seq.  Thus prudential

standing also exists.

The Motion is styled as one seeking to compel turnover of the funds at

issue, and the Trustee's objection for that reason addresses 11 U.S.C. §§ 542

and 543.  Trustee is correct that many cases have found that a Chapter 7

debtor lacks standing to object to decisions taken by a chapter 7 trustee in the

administration of an estate.  *See e.g., In re Adams*, 424 B.R. 434, 436-37

(Bankr. N.D. Ill. 2010).  This Court, however, considers the *composition* of an

estate and the *administration* of an estate to be different.  At issue in this case

is composition, i.e. what interests are included in that estate to be

administered.  The relief Debtor seeks is a determination of whether the

$16,592.87 is property of the estate which the Trustee may retain and

administer.  The Court considers this a fundamentally different question

which Debtor has sufficient standing to raise in the present circumstances.

Trustee also mentioned in her objection that the Motion was

procedurally improper and that Debtor's claim under § 541 should have been

brought in an adversary proceeding under Fed. R. Bankr. P. 7001(2).[3]  Trustee

is technically correct because Debtor's Motion seeks to determine the extent of

an interest in property.  However, neither party raised this procedural issue at

the hearing nor in briefs submitted thereafter.  One Court in a similar

situation stated the following:

> Determination of validity, priority or extent of interests in
> property should be carried out by adversary proceeding,
> Bankruptcy Rule 7001(2), and not by motion for relief from
> stay or any other motion. However, both Riverwest and
> Trustee deliberately argued the merits of their positions,
> and appear to have waived any technical defects in
> procedure. Both parties received sufficient notice and
> opportunity to present their positions to satisfy due process.
> No purpose would be served by insisting on technically
> correct procedure at this late date.

*In re Gee*, 124 B.R. 586, 590 (Bankr. N.D. Okla. 1991).   Both parties at the

hearing argued the merits of their positions, and little purpose would be

served by requiring arguments to be repeated in an adversary proceeding.

---

[3] Tr. Obj. 4, ¶ 14 n. 5, ECF No. 33.

-8-

Therefore, the Court considers the issue to have been waived.

### B. Construction Trust Funds

The central issue in this case is whether the $16,592.87 should be considered construction trust funds under the CTFA.  If the $16,592.87 are construction trust funds, then by operation of the CTFA Debtor on the petition date was "a trustee of the trust funds."  Tex. Prop. Code Ann. § 162.002.  In that case 11 U.S.C. § 541(d) directs that such property becomes property of the estate "only to the extent of the [D]ebtor's legal title to such property, but not to the extent of any equitable interest in such property that the [D]ebtor does not hold."  If the $16,592.87 are not construction trust funds, then Debtor was not a trustee of those funds and the money is clearly  property of the estate under 11 U.S.C. § 541(a)(1) subject to claims of the Trustee.

The CTFA is a statute designed to ensure that subcontractors and materialmen are paid for construction work they perform, and that funds paid by property owners for construction work do not disappear.  The statute has been described by one Court in this district as follows:

> The Trust Fund Act "imposes fiduciary responsibilities on contractors to ensure that subcontractors, mechanics and materialmen are paid for work completed." *In re Waterpoint Int'l LLC*, 330 F.3d 339, 345 (5th Cir. 2003); *accord Fidelity & Guar. Ins. Underwriters, Inc. v. Wells Fargo Bank, N.A.*, No. Civ. A. H–04–2833, 2006 WL 870683, at *9 (S.D. Tex. Mar. 31, 2006).  This provision was "enacted to serve as a special protection for subcontractors and materialmen in

> situations where contractors or their assignees refused to pay the subcontractor or materialman for labor and materials." *In re Waterpoint Int'l LLC*, 330 F.3d at 345; *see McCoy v. Nelson Utils. Servs., Inc.*, 736 S.W.2d 160, 164 (Tex. App.—Tyler 1987, writ ref'd n.r.e.).
>
> Accordingly, construction payments constitute trust funds under Chapter 162 of the Texas Property Code if they are "made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state." Tex. Prop. Code Ann. § 162.001 (Vernon 1995 & Supp. 2005); *accord Argyle Mech., Inc. v. Unigus Steel, Inc.*, 156 S.W.3d 685, 687 (Tex. App.—Dallas 2005, no pet.); *Holladay v. CW & A, Inc.*, 60 S.W.3d 243, 246 (Tex. App.—Corpus Christi 2001, pet. denied). In such a situation, the "contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds" serves as trustee. Tex. Prop. Code Ann. § 162.002 (Vernon 1995); *accord C & G, Inc. v. Jones*, 165 S.W.3d 450, 453 (Tex. App.—Dallas 2005, pet. denied); *Holladay*, 60 S.W.3d at 246. The artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or furnishes labor or material for the construction or repair of an improvement on specific real property located in Texas is the beneficiary of any trust funds paid or received in connection with the improvement. *See* Tex. Prop. Code Ann. § 162.003 (Vernon 1995 & Supp. 2005); *accord In re Waterpoint Int'l LLC*, 330 F.3d at 345.

*Taylor Pipeline Const., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 714–15 (E.D. Tex. 2006). The Fifth Circuit has stated that "similar to Texas's remedial lien statutes, the CTFA 'was enacted for the protection of [subcontractors], and is a remedial statute that should be given a broad construction.'" *In re T.S.C. Seiber Services, L.C.*, 771 F.3d 246, 250 (5th Cir.

2014), quoting *Dealers Elec. Supply Co. v. Scroggins Const. Co.*, 292 S.W.3d 650, 658 (Tex. 2009).

For the CTFA to be applicable under its own terms, there must be a trustee, a beneficiary, and trust funds.  A trustee under the CTFA is "a contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds . . ."  Tex. Prop. Code Ann. § 162.002.  Debtor was a contractor and thus falls within the definition of a CTFA trustee.

The CTFA provides for two categories of persons who are beneficiaries of trust funds.  First, any "artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or who furnishes labor or material for the construction or repair of an improvement on specific real property in this state is a beneficiary of any trust funds paid or received in connection with the improvement."  Tex. Prop. Code Ann. § 162.003(a).  Second, "a property owner is a beneficiary of trust funds described by Section 162.001 in connection with a residential construction contract."  Tex. Prop. Code Ann. § 162.003(b).[4]  The Cordells were property owners who hired Debtor to perform a residential

---

[4] Trustee's "Brief in Support of Trustee's Objection to Debtor's Motion to Compel Turnover of Funds from Trustee" submitted after the hearing incorrectly states that "Statutory and case law provides no protection to any party other than subcontractors and material men."  Tr. Br., 4, ¶ 14, ECF No. 51.

construction contract on their home in Marion County. Thus, the Cordells are
beneficiaries under the CTFA. Similarly, any artisan, laborer, mechanic,
contractor, subcontractor, or materialman who labored or furnished material
for the construction project are also beneficiaries.

Does the check for $25,000.00, of which the $16,592.87 was part, meet
the definition of trust funds described by Section 162.001? The CTFA states
unequivocally that "construction payments are trust funds under this chapter
if the payments are made to a contractor or subcontractor or to an officer,
director, or agent of a contractor or subcontractor, under a construction
contract for the improvement of specific real property in this state." Tex. Prop.
Code Ann. § 162.001(a). The Cordells paid Debtor. Debtor was a contractor
and was hired under a written contract to construct improvements on specific
real property in Marion County, Texas. Thus the check for $25,000.00 was a
construction payment comprised of trust funds under the CFTA. These funds
were held by Debtor, as trustee, for both the Cordells as property owners and
any unpaid laborers or materialmen. Had Debtor not been able to finish the
job or pay outstanding bills related to the project, the Court cannot see how
Trustee could dispute the trust fund character of the $16,592.87 seized by the
receiver.

Because Debtor was able to finish, does the law operate to punish him

-12-

for his efforts?  As Trustee points out, Debtor was not perfect.  The evidence

shows that Debtor failed to technically comply with all of the construction

account segregation requirements of Tex. Prop. Code Ann. § 162.006.  Debtor

only had a single account and a single job, but the periodic statement admitted

into evidence for that account did not have a "construction account" label.

Tex. Prop. Code Ann. § 162.006(b).  Nor is the evidence clear that Debtor

maintained all required information of disbursements and other supporting

documentation.  Tex. Prop. Code Ann. § 162.007.  Trustee argues these and

other alleged failures should defeat the character of the $16,592.87 as

construction trust funds.  The Court does not agree.

Trust funds under the CTFA do not lose their character because a

trustee fails to comply with the technical requirements of the statute.  Rather,

"a trustee who commingles trust funds with other funds in the trustee's

possession *does not defeat a trust created by this chapter*" [emphasis added].

Tex. Prop. Code Ann. § 162.031(d).  This makes perfect sense because the

CTFA is designed to impose duties on a trustee to maintain trust funds for

benefit of beneficiaries.  Such a scheme would be severely undermined if a

trustee could defeat his duties by failing to comply with the CTFA's technical

requirements.

The same reasoning leads to the conclusion that the $16,592.87 did not

-13-

cease to be trust funds when they were seized by the receiver, nor when they were remitted by him to the Trustee. The CTFA contains no provision supporting such a contention, and clearly says the opposite. "Trust funds paid to a creditor under this chapter are not property or an interest in property of a debtor who is a trustee described by Section 162.002." Tex. Prop. Code Ann. § 162.001(d). At least one treatise on the subject states that "*[i]n order to ensure that the bankruptcy of the trustee does not defeat the trust*, trust funds paid to a creditor are neither the property nor an interest in property of a debtor who is a trustee under this provision" [emphasis added]. 18 Dorsaneo, Texas Litigation Guide § 271.02 (2022).

Bankruptcy law also supports the conclusion that the trust fund character of the $16,592.87 seized by the receiver continued after the petition date. Property in the categories enumerated by 11 U.S.C. § 541 becomes property of the estate. But, it is state law like the CTFA which determines the extent of those property interests. The Supreme Court instructs that:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

*Butner v. United States*, 440 U.S. 48, 55 (1979). Furthermore, "the bankruptcy court's jurisdiction over [debtor's] property extends only as far as [debtor's]

-14-

particular interest in the property.  Accordingly, the Bankruptcy Code embraces the crucial distinction between a legal interest and an equitable interest in property." *Marrs-Winn Co. v. Giberson Electric, Inc.*, 103 F.3d 584, 589 (7th Cir. 1996).  This distinction can be found at 11 U.S.C. § 541(d).[5]  If Debtor held, *as of the commencement of the case,* only legal title to the $16,592.87 and not equitable title, then the Trustee only holds legal title as well.

The Court finds that Trustee only holds legal title.  The evidence shows that the Cordell job was not completed when the $16,592.87 was taken by the receiver.  Nor was the job completed on the petition date.  This is evidenced by the significant fact that *after* both the seizure of the $16,592.87 *and* the filing of his voluntary bankruptcy petition, the Cordells *still* paid Debtor another "draw" to complete the job.  It should not matter that to finish the construction project Debtor was forced to borrow funding from his mom.  Rather, it is to Debtor's credit that he went to such lengths to fulfill his duties as a trustee

---

[5] The full text of 11 U.S.C. § 541(d) is as follows:

"Property in which the debtor holds, *as of the commencement of the case*, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold" [emphasis added].

imposed by the CTFA.

## IV. Conclusion

For the reasons stated above, the Court finds that the $16,592.87

remitted to Trustee by the receiver were construction trust funds as of the

commencement of the case pursuant to the operation of Tex. Prop. Code Ann.§

162.001, et. seq. and 11 U.S.C. § 541(d).

**IT IS THEREFORE ORDERED** that the "Motion to Compel Trustee

to Turnover Funds to Debtor" filed by the Debtor, James Kevin Brown, on May

25, 2022 should be **GRANTED** and that the sum of $16,592.87 held by

Trustee is property of Debtor's estate only to the extent of bare legal title

under 11 U.S.C. § 541(d) which should be returned to Debtor.

**IT IS FURTHER ORDERED** that the Chapter 7 Trustee shall, within

fourteen calendar days from the date of this order, remit to Debtor the sum of

$16,592.87.

**IT IS FURTHER ORDERED** that except to the extent set forth herein

any other relief requested in the Motion is denied.

Signed on 11/28/2022

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE